UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KENYON FREEMOSHA CANADY,

      Plaintiff,

      v.                                        Case No. 19-C-1594

AMBER WOLF, DAMONT THURMOND,
ADRIAN WATKINS and BROWN COUNTY
DRUG TASK FORCE,

      Defendants.

## SCREENING ORDER

Plaintiff Kenyon Freemosha Canady, who was incarcerated at Chippewa Valley Correctional Treatment Facility at the time of filing, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. Plaintiff filed a motion to reopen the case on December 9, 2019. The complaint was dismissed for failure to state a claim with leave to amend the complaint by January 30, 2020. Plaintiff filed an Amended Compliant on January 28, 2020, and it is ready for screening. That portion of the court's earlier order describing the principles of law governing the process of screening the complaint applies here but will not be repeated.

### ALLEGATIONS OF THE COMPLAINT

Plaintiff alleges in his amended complaint that on or about April 6, 2018, Amber Wolf, who the complaint refers to as "CI 1866 under the employ of the BCDTF [Brown County Drug Task Force]" called him to get pills for her. Plaintiff alleges that he made arrangements to meet Wolf at the east Walmart East. Plaintiff claims that Wolf took the pills he had without paying for them, jumped out of his car and entered another car, which then drove off. When he attempted to give chase, Plaintiff alleges that her accomplices began to shoot at him. Plaintiff states they fired eight times at him, nearly taking his life. According to the attached letters from the Brown County District Attorney Victim Witness Coordinator which are addressed to Plaintiff in his capacity as

a victim of crime, Wolf's alleged accomplices were Damont Thurmond and Adrian Watkins, each of whom was convicted of various crimes arising out of the incident Plaintiff describes.

Plaintiff alleges that he later learned that Amber Wolf "set him up" on March 21 and March 30, 2018, and that he has audio and video recordings of her interactions with him on those days when she was working with the BCDTF. Based on these allegations, Plaintiff claims his civil and constitutional rights were violated. He seeks $25 million in damages for the physical and mental losses he has endured and the emotional distress he has suffered, and requests criminal charges against the defendants.

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). Plaintiff fails to allege that any of the individual defendants were acting under color of state law.

Although Plaintiff alleges that Amber Wolf was working as a CI, otherwise known as a confidential informant, that does not mean she was acting under color of state law. In fact, a confidential informant is one who informs law enforcement of criminal activity by others, usually to avoid or lessen punishment for his or her own crimes. While it is conceivable that a confidential informant could act under color of state law, the facts alleged by Plaintiff show only that she received pills from Plaintiff in an apparent drug transaction and left without paying. It is clear the allegations of the complaint and attached letters that Thurmond and Watkins were not acting under color of state law when they shot at Plaintiff. They were charged and convicted for their criminal conduct. In sum, it appears from Plaintiff's amended complaint that Ms. Wolf was involved in a series of drug transactions with Plaintiff, as well as with her co-defendants, Damont Thurmond

2

and Adrian Watkins, both of whom are now apparently serving prison terms, as is Plaintiff himself. And as noted in the court previous order, the BCDTF is not a suable entity.

Plaintiff's Amended Complaint has provided no arguable basis for relief, having failed to make any rational argument in law or fact to support his claims. *See House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992) (quoting *Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988), *aff'd sub nom. Neitzke v. Williams*, 490 U.S. 319 (1989)).

**IT IS THEREFORE ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Green Bay, Wisconsin this 6th day of February, 2020.

s/ William C. Griesbach
William C. Griesbach, District Judge
United States District Court

This order and the judgment to follow are final. The plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If the plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). The plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If the plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.